UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DONNA BRUCE,**                                       Chapter 13
    Debtor                                            Case No. 11-20561-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONNA BRUCE,**
    Plaintiff
v.                                                     Adv. P. No. 12-1079
**STEWART TITLE GUARANTY COMPANY,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM AND ORDER**

Whereas, Donna Bruce (the "Debtor") filed a voluntary Chapter 13 petition on November 9, 2011; and

Whereas, on Schedule A-Real Property she listed an ownership interest in property located at 5 Juniper Valley Court, Beverly, Massachusetts (the "Property") with a value of $855,100, subject to a mortgage in favor of Stewart Title Guaranty Company ("Stewart Title") in the sum of $420,000;[1] and

Whereas, in her Statement of Financial Affairs, the Debtor listed a pending divorce proceeding involving her former spouse, William A. Bruce ("Husband"); and a pending

---

[1] The Court takes judicial notice of the docket in the Debtor's Chapter 13 case and prior Chapter 7 case. *See* Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999).

1

malpractice claim against James Mitchell ("Mitchell"), although on Schedule B-Personal Property she did not list any "[c]ontingent and unliquidated claims of every nature . . ."; and

Whereas, in her Chapter 13 plan, the Debtor disclosed that she had "obtained a third party lender who is going to lend Debtor money to pay off Stewart Title in its' [sic] entirety . . . and . . . [a]ppropriate Motions will be filed with the Court for approval;" and

Whereas, the Debtor obtained a discharge of all dischargeable debts on December 8, 2010 in a prior Chapter 7 case (Case No. 10-18455-JNF) and is not entitled to a discharge in her present Chapter 13 case; and

Whereas, in the Debtor's prior case, Mitchell, as Trustee of DAR Realty Trust, obtained, without objection, relief from the automatic stay to file a petition in equity in the Essex County Probate and Family Court, Department of the Trial Court, for the purposes of obtaining instructions as to what actions he should take to preserve and protect the assets of the Trust or, alternatively, appointing and empowering a special master to list, market and sell the Property; and

Whereas, on March 30, 2012, the Debtor filed a Verified Complaint against Stewart Title, to which she attached 14 exhibits, and in which she alleged, in pertinent part, the following:

> As of June 3, 1994, the Plaintiff was the owner of the premises located at 5 Juniper Valley Court in Beverly Farms, Massachusetts (the "Premises").
>
> On June 25, 2002, the Plaintiff and her husband William A. Bruce ("Husband") were divorced pursuant to a Decree Nisi entered in the Essex County Probate and Family Court, and subject to the terms of a certain Separation Agreement dated June 24, 2002. Specifically with regard to the Premises, the Separation

2

Agreement provided, in pertinent part, that (a) the Plaintiff pay the Husband for his interest in the Premises the sum of $350,000.00, and (b) that the Husband pay alimony to the Plaintiff which included mortgage payments, real estate taxes and homeowner's insurance on the Premises and the balance be paid to an account designated by the Plaintiff. . . .

The Separation Agreement further provided that the Premises "be placed in a Spendthrift Trust for the Wife's benefit, and. . .that the children be named as survivor beneficiaries."

Thereafter, Husband represented to the Plaintiff that he would pay all expenses associated with the trust.

On June 27, 2002, a Declaration of Trust creating the DAR Trust ("DAR 1") was recorded in the Essex South District Registry of Deeds, Book 18867, Page 421, appointing Cynthia Kennedy as Trustee. . . .  On that same date, the Plaintiff conveyed title to the Premises to DAR 1 by deed recorded in the Essex South District Registry of Deeds . . . .

Sometime thereafter, the Plaintiff was informed by Cynthia Kennedy that she no longer wished to serve as Trustee. Accordingly, on September 6, 2002, she conveyed title to the Premises back to the Plaintiff by deed recorded in the Essex South District Registry of Deeds . . . .

Husband hired Attorney James Mitchell ("Mitchell") to serve as trustee. Mitchell represented the Husband in his real estate development business. On or about October 30, 2002, Mitchell created the DAR Realty Trust ("DAR 2"), naming himself as Trustee.  . . . Plaintiff questions the validity thereof.

On that same date, Mitchell also created the Bruce Family Trust, an *inter vivos* trust (the "Family Trust"), designating it as the sole beneficiary of DAR 2 and the Plaintiff as a lifetime beneficiary. The Family Trust specifies that "[i]t is the intent of the donors that the premises be preserved as the residence of the life beneficiary. . . ."

Also on October 30, 2002 the Plaintiff conveyed title to the Premises to Mitchell as Trustee of DAR 2. . . .

At all times relevant to the foregoing, the Plaintiff was not represented by independent counsel. Plaintiff was typically provided with a document for her signature and told that it was needed in order to effect the intent of the

Separation Agreement.

Pursuant to the terms of the Separation Agreement, a mortgage was taken through MERS, as nominee for Mortgage Partners.

On or about January 9, 2004, with the knowledge and consent of Mitchell and Husband, the Plaintiff granted a mortgage on the Premises to Chase Manhattan Bank, NA ("Chase"), in the amount of $440,000 (the "Chase Mortgage"), the proceeds of which were used by Husband to pay off the prior mortgage to Mortgage Partners, Inc. . . .

At the time of the closing of the Chase Mortgage, Chase failed to note that title to the Premises was held by Mitchell as Trustee of DAR 2 and not by the Plaintiff individually (the "Title Defect").

Thereafter, on or about September 30, 2004, without the Plaintiff's knowledge or consent, Plaintiff alleges that the Husband ceased making any payments on the Chase Mortgage and that Mitchell was aware of that fact at all times relevant thereto. Husband did not resume payments until on or about August 31, 2007. Further, Husband ceased making alimony payments to the Plaintiff, for which Husband was ultimately held in Contempt in an action brought by Plaintiff in the Essex County Probate and Family Court.

Notwithstanding the fact that the Husband was not paying the Chase Mortgage as aforesaid, Husband continued to deduct the amount of monthly mortgage payments from the Plaintiff's alimony pursuant to the terms of the Separation Agreement.

Plaintiff did not learn of Husband's failure to make the Chase Mortgage payments until she was informed by Mitchell that Chase had commenced foreclosure proceedings to enforce the Chase Mortgage against the Plaintiff and Mitchell as Trustee of DAR 2.

When the Title Defect was discovered, the Defendant Stewart retained counsel for Chase who commenced an action against the Plaintiff and Mitchell as Trustee of DAR 2 (the "Civil Action") seeking, *inter alia*, to cure the Title Defect.

Thereafter, and without the Plaintiff's knowledge or consent, Mitchell and Husband conspired to settle the Defendant Stewart's claim in the Civil Action, by which Chase received a payoff of its mortgage in the amount of $527,301.37 from the Defendant, in consideration of which the Defendant Stewart received

a balloon note in the amount of $285,000 from DAR 2 (the "Note"), secured by a mortgage on the Premises (the "Mortgage") and Husband's personal guaranty. . . .

On August 30, 2007, Mitchell and Husband entered into a Settlement Agreement with Chase reflecting the terms of the aforementioned settlement in general terms. . . . On August 29, 2007, Husband came to the Plaintiff with a document (which the Plaintiff believes and avers was the Settlement Agreement) and threatened that if she did not sign the document she would lose her home. Husband did not explain the terms of the settlement to the Plaintiff and did not show the Plaintiff any other documents whatsoever. Under duress, the Plaintiff signed the document, unaware of the terms of the aforementioned settlement.

On August 30, 2007, Mitchell had the Plaintiff sign a document entitled "DAR Realty Trust and Bruce Family Trust" CERTIFICATE AND DIRECTION OF BENEFICIARY. " . . . However, Mitchell did not disclose to Plaintiff that the terms of the refinance referred to therein included the balloon note, and Mitchell did not show Plaintiff a copy of the balloon note. Thereafter, despite the Plaintiff's repeated calls to Mitchell and Husband, they failed to provide her with copies of the aforementioned settlement documents.

On August 23, 2007 Attorney Kevin J. Erb ("Erb") filed a Notice of Appearance in the Civil Action in the Plaintiff s behalf . . . On that same date, Erb executed a Stipulation of Dismissal with respect to the Civil Action . . . The Plaintiff did not retain Erb, and has never met, spoken or corresponded with Erb regarding any matter whatsoever, including the terms of the Settlement Agreement, Note and Mortgage.

DAR 2 defaulted on the Note and Mortgage by failing to make its monthly payments when due, among other things.

On or about June 1, 2009, after the Defendant Stewart had provided DAR 2 with notice of default, Stewart entered into an Amendment and Allonge to Balloon Note (the "Allonge"). . . . The Plaintiff was not aware of the aforementioned default or the Allonge.

DAR 2 subsequently defaulted on the Allonge by failing to pay real estate taxes.

DAR 2 also failed to pay taxes to the Commonwealth of Massachusetts. As a

result, DAR 2 granted a mortgage to the Massachusetts Department of Revenue in the amount of $18,300 and recorded at the Essex County Registry of Deeds . . . ; and

Whereas, based upon the foregoing allegations, the Debtor formulated three counts; and

Whereas, through Count I, captioned "Fraud and Deceit," the Debtor alleged that her consent to the Settlement Agreement, as well as the Note and Mortgage in favor of Stewart Title,[2] was obtained as the result of the fraud and deceit of Mitchell and her Husband; that her Husband and Mitchell intended to cause her harm and she and her children have in fact suffered material and substantial harm as the result of that fraud and deceit, including, without limitation, the imminent foreclosure of her home and liability for an obligation which she did not understand and for which she did not consent;[3] and

Whereas, in Count I, the Debtor also alleged that Stewart Title "knew or should have known of the fraud and deceit of her Husband and Mitchell, and accordingly, she is entitled to a determination that the Settlement Agreement, Note, Mortgage and Allonge are void and unenforceable; and

Whereas, through Count II, the Debtor seeks rescission of "[t]he Settlement

---

[2] Mitchell, as Trustee of DAR 2, was the sole signatory of the Note, Mortgage and Allonge in favor of Stewart Title.

[3] The Debtor was not liable personally for obligations arising under the note and mortgage to Stewart Title as she did not execute either the note or the mortgage. As noted by Stewart Title in its Motion to Dismiss, Mitchell as Trustee of DAR 2 deeded the Property to the Debtor by Quitclaim Deed on October 19, 2011, less than three weeks before the commencement of her case, subject to existing mortgages, including that of Stewart Title.

Agreement, Mortgage and Allonge;" and

Whereas, through Count III, the Debtor seeks reformation of "the Note and Allonge to terms consistent with the former Chase Mortgage note;" and

Whereas, Stewart Title filed a Motion to Dismiss the Debtor's three count complaint in which it stated that "[a]s a result of the settlement with Chase, the Debtor was no longer personally obligated on the discharged 2004 Mortgage and underlying note. . ."; and

Whereas, Stewart Title further noted that by deed dated October 19, 2011 and recorded on November 9, 2011, the Debtor acquired title to the Property, subject to its mortgage and all mortgages of record;[4] and

Whereas, Stewart Title, citing, *inter alia,* Fed. R. Civ. P. 9, made applicable to this proceeding by Fed. R. Bankr. P. 7009, as well as In re Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 36, 44 (D. Mass. 2003),[5] Ashcroft v. Iqbal, 556 U.S. 662 (2009),

---

[4] The Debtor did not mention this deed in her Complaint, but listed the Property on Schedule A. If the Debtor had contended that she held merely a life estate, she would have been obliged to list her interest on Schedule B.

[5] In Indian Motorcycle, the court stated:

Rule 9(b) dictates that fraud must be alleged with particularity. The party alleging fraud must specify "(1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent." In re Allaire Corp. Securities Litigation, 224 F.Supp.2d 319, 325 (D. Mass. 2002). One purpose of the rule is to give the defendant adequate notice of the fraud claim. Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir.1985). The rule also prevents a plaintiff from filing first and searching for a cause of action later. Id.

299 B.R. at 44.

and Sanchez ex rel. D.R.-S v. U.S., 671 F.3d 86, 107 (1st Cir. 2012),[6] argued 1) that the Debtor's claims are barred by the applicable statute of limitations, *see* Mass. Gen. Laws ch. 260, § 2A ("Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues.");[7] and 2) that the Debtor's Complaint fails to comply with the

---

[6] The United States Court of Appeals for the First Circuit stated:

Per the Iqbal decision, we described the "two-pronged approach . . . implicit in [ ] Twombly," pursuant to which we must first separate a complaint's factual allegations from its legal conclusions. Ocasio–Hernández, 640 F.3d at 10. "The second prong . . . requires a reviewing court to accept the remaining factual allegations in the complaint as true and to evaluate whether, taken as a whole, they state a facially plausible claim." Id. at 10–11 (emphasis added). Moreover, "[n]on-conclusory factual allegations . . . must [ ] be treated as true, even if seemingly incredible." Id. at 12 (citing Iqbal, 129 S.Ct. at 1951). We emphasized that the court should not "attempt to forecast a plaintiff's likelihood of success on the merits," and instead should "evaluate the cumulative effect of the factual allegations." Id. at 13–14. In short, "[t]he question confronting a court on a motion to dismiss is whether all the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's [sic] entitlement to relief plausible." Id. at 14 (relying on Twombly, 550 U.S. at 569 n. 14, 127 S.Ct. 1955).

[7] Stewart Title argues:

In determining what statute of limitations to apply, this Court "must look to the 'gist of the action' or the essential nature of the plaintiff's claim." Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.M.B.H. & Co. KG., 448 F. Supp.2d 244, 263 (D. Mass. 2006) (citation omitted). The Debtor's Complaint seeks equitable relief in the form of rescission and/or reformation based upon fraud and deceit, not breach of contract. Indeed, the remedies of rescission and reformation generally are not available in cases involving mere breach of contract. *See* Ward v. Ward, 874 N.E.2d 433, 437, 437 n.5 (Mass. App. Ct. 2007) (identifying rescission or reformation of contracts as the appropriate remedy in cases of mutual mistake, fraud, false

heightened pleading requirements of Fed. R. Civ. P. 9; and

Whereas, the Debtor filed a Response in which she argued that the statute of limitations was tolled due to the undue influence of her Husband and Mitchell and the fraudulent concealment of her claims; and

Whereas, the Debtor asserted that she did not learn of the balloon note until "sometime after the Allonge was executed and foreclosure proceedings were underway;" and

Whereas, the Debtor further asserted that her "claims for rescission and reformation of the Settlement Agreement must stand because the three-year statute of limitations was equitably tolled;" and

Whereas, the Debtor argued that she sufficiently pled her fraud claims as "the

---

statement of material fact, scrivener's error, or counsel's negligence) (citations omitted); Worcester Heritage Soc., Inc. v. Trussell, 577 N.E.2d 1009, 1010 (Mass. App. Ct. 1991) ("There is ample authority for refusing rescission where there has been only a breach of contract rather than an utter failure of consideration or a repudiation by the party in breach.").

Accordingly, as the Debtor's Complaint is premised upon fraud, the three-year tort statute of limitations applies. *See* M.G.L. c. 260, § 2A. Based upon the applicable statute of limitations, the Debtor's claims are untimely as they should have been brought prior to August 30, 2010. *See* id; Cambridge Literary Properties, Ltd., 448 F. Supp.2d at 263. It is of no consequence that the Debtor seeks equitable relief rather than monetary relief. *See* Gilbert v. City of Cambridge, 932 F.2d 51, 57-58 (1st Cir. 1991), *cert. denied*, 502 U.S. 866 (1991) ("It is settled, therefore, that where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy."). The Debtor's Complaint must be dismissed as untimely.

Defendant agrees that the Complaint alleges that 'Stewart knew or should have known of the Fraud and Deceit of Husband and Mitchell;'" and

Whereas, the Debtor added in her Response that Stewart Title was the agent of her Husband and Mitchell, an allegation omitted from her Complaint; and

Whereas, the Court heard the parties' arguments at a hearing held on June 20, 2012,

Now, therefore, the Court finds and rules as follows:

The Court may consider the exhibits attached to the Complaint, as well as the deed attached to Stewart Title's Motion to Dismiss. *See* Doucot v. IDS Scheer Americas, Inc., 734 F.Supp.2d 172, 180 (D. Mass. 2010). Moreover, the Court accepts the Debtor's well-pleaded facts as true and reviews them, as a whole, to determine whether they state facially plausible claims. *See* Sanchez ex rel. D.R.-S., 671 F.3d at 107 .

The Court finds that the Debtor's Complaint is devoid of any facts that would establish any kind of relationship, agency or otherwise, between Stewart Title, on the one hand, and the Debtor's former Husband or Mitchell on the other hand. The Debtor's conclusory allegation that Stewart Title knew or should have known of the fraud and deceit of her Husband and Mitchell is wholly unsupported by any factual allegations or even inferences from existing allegations. Indeed, the Settlement Agreement, to which Stewart Title was not a party, removed the Debtor's personal liability and replaced it with the obligation of Mitchell as Trustee of DAR 2 on a note secured by a mortgage on the Property in the substantially reduced amount of $285,000. Moreover, in view of the substantial equity in the Property, the facts adduced by the Debtor in her Complaint compel the inferences that

the reduced amount of the mortgage would have made refinancing easier and that a refinancing would appear to have been feasible, particularly where the Debtor represented in her Chapter 13 plan that she had a third party lender willing to refinance the Property.

The Complaint contains no allegations as to 1) the identity of an officer or employee at Stewart Title who had contact with the Debtor and/or her Husband or Mitchell; 2) statements made by such officer or employee; 3) the date, time and place the statements were made; 4) reasons why any statements made by agents of Stewart Title were fraudulent; and 5) the factual basis for the conclusion that some type of agency relationship existed between Stewart Title and either Mitchell or the Debtor's Husband. In the absence of such allegations, the Complaint fails to state a facially plausible claim for relief. The Debtor's assertion that Stewart Title knew or should have known of the fraud and deceit of her Husband and Mitchell cannot withstand scrutiny and Count I of her Complaint must be dismissed under the Iqbal standard. Without details about such an agency relationship, the alleged fraudulent conduct of the Husband and Mitchell cannot be imputed to Stewart Title, particularly where the Debtor is not personally liable under the Note and Mortgage to Stewart Title, and Stewart Title was not a party to the Settlement Agreement.

The Court further finds that the three year statute of limitations bars the Debtor's claims against Stewart Title. In the absence of any specific allegations that Stewart Title engaged in any fraud or any specific allegations that the fraud of her Husband and Mitchell can be imputed to Stewart Title, the doctrine of equitable tolling does not apply to claims against Stewart Title. The Debtor set forth no facts which would even suggest that Stewart

11

Title concealed the basis for a claim. "The statute requires the plaintiff to show that the defendants took an affirmative step to hide the cause of action. First Choice Armor & Equip., Inc. v. Toyobo Am., Inc., 717 F.Supp.2d 156, 160 (D. Mass. 2010)("The statute requires the plaintiff to show that the defendants took an affirmative step to hide the cause of action. . . '[M]ere silence is not a fraudulent concealment . . . there must be something in the nature of positive acts with intent to deceive.'").

With respect to Counts II and III, the court observed in Benotti v. Gill, No. 960586, 1996 WL 1186956 at *5 (Mass. Super. Nov. 18, 1996),[8] that rescission and reformation are remedies,

---

[8] In Benotti v. Gill, the court stated:

> The primary purpose of an act of rescission is to place plaintiff in the status quo. Consequently, the plaintiff, as a condition precedent to equitable relief, must offer to return any consideration received by him under the transaction sought to be rescinded. *In general, the complaint should contain a tender or offer to return the consideration received by the plaintiff. See* J. Nolan, *Equitable Remedies*, § 403 (1993). Nancy [the Plaintiff] was not a party to the transaction at issue, and therefore cannot expect to 'return any consideration' because she never received any. Ordinarily a party seeking to reform an instrument must base her right to reformation upon fraud, accident, or mutual mistake, meaning a mistake common to all parties to the instrument. Nolan, *Mass Practice Series*, § 401. Case law on reformation and rescission deals with the parties who were involved in the original transaction. *See, e.g.*, Marshall v. Marshall, 10 Mass.App.Ct. 893, 409 N.E.2d 1322 (1980) (deed conveying property to defendant son rescinded due to defendant son's exertion of undue influence on plaintiff mother, a party to original transaction). Yorke v. Taylor, 332 Mass. 368, 124 N.E.2d 912 (1955) (plaintiff induced to enter contract in reliance on false representation of fact entitled to rescission, where both plaintiff and defendant were original parties in transaction); Page v. Higgins, 150 Mass. 27, 22 N.E. 63 (1889) (mistake concerning contract or instrument must be common to all parties in written contract or instrument to seek reformation).

not causes of action. Alternatively, "[u]nder Massachusetts law, to sustain a claim for rescission of a contract, the party seeking rescission bears the burden of pleading factual circumstances which merit such relief." P.L.A.Y., Inc. v. NIKE, Inc., 1 F.Supp.2d 60, 65 (D. Mass. 1998)(citing Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 492 N.E.2d 1112, 1119–20 (1986); Klein v. Commonwealth, 318 Mass. 592, 63 N.E.2d 360, 361 (1945)). An agreement may be rescinded by a court, in the exercise of its equitable discretion, "only upon a showing of fraud, accident, mistake or some type of grossly inequitable conduct which renders the contract void ab initio." P.L.A.Y., Inc. v. NIKE, Inc., 1 F.Supp.2d at 65 (citing Elias Bros. Rest., Inc. v. Acorn Enters., 831 F.Supp. 920, 927 (D. Mass.1993); Kannavos v. Annino, 356 Mass. 42, 247 N.E.2d 708, 712–13 (1969); Vincent v. Torrey, 11 Mass.App.Ct. 463, 417 N.E.2d 41, 43 (1981); Covich v. Chambers, 8 Mass.App.Ct. 740, 397 N.E.2d 1115, 1121 (1979)). Because Stewart Title was not a party to the Settlement Agreement, the effect of rescission of the Settlement Agreement on the Note and Mortgage is unclear, particularly where Stewart Title paid Chase $527,301.37 and Chase discharged its mortgage. However, "rescission is not available where the contract has been substantially performed." P.L.A.Y., Inc., 1 F.Supp.2d at 65 (citing, *inter alia,* De Angelis v. Palladino, 318 Mass. 251, 61 N.E.2d 117, 120 (1945)). Because the Chase mortgage has been discharged, and because the Debtor would have to tender the consideration paid by Stewart Title to Chase to avoid the effectuated

---

1996 WL 1186956 at *5 n.7 (emphasis supplied). The Debtor's Complaint contains no tender offer.

13

Settlement Agreement, the Court finds that Count II of the Complaint fails to set forth sufficient facts to state a plausible claim for rescission. Moreover, because the Debtor did not satisfy the requirements of Rule 9, rescission of the Settlement Agreement cannot be predicated upon a fraudulent misrepresentation by Stewart Title who was not a party to it, and, even if the Settlement Agreement was rescinded vis à vis the parties to it, it does not follow that the note and mortgage would be void, particularly where the Debtor did not execute either the note or mortgage in favor of Stewart Title.

With respect to Count III, the Court finds that the Debtor failed to plead sufficient facts to sustain a claim against Stewart Title for reformation of the Settlement Agreement, as it was not a party to that agreement. The Debtor's Complaint sounded in tort, not contract.

In view of the foregoing, the Court grants Stewart Title's Motion to Dismiss as the Debtor's Complaint does not state plausible claims for relief under Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 566 U.S. 662 (2009). The Court observes that its ruling has no bearing on any claims which the Debtor may have against her Husband, Mitchell or Attorney Erb.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 1, 2012

14